IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JENNIFER MCPHAIL** | § | |
| | § | |
| | § | A-14-CA-829-LY |
| | § | |
| **LYFT, INC.** | § | |

**AMENDED REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion to Remand (Dkt. No. 5); Lyft's Response to Plaintiff's Motion to Remand (Dkt. No.6); and Plaintiff's Reply (Dkt. No. 9). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

The undersigned submitted a Report and Recommendation on November 24, 2014, recommending that the Motion to Remand be granted. Lyft filed objections to that Report and Recommendation on December 9, 2014. Dkt. No. 14. On December 22, 2014, Lyft submitted a Notice of Supplemental Authority, suggesting that the Supreme Court's decision the previous week in *Dart Cherokee Basin Operating Co. LLC v. Owens*, 135 S.Ct. 547 (2014), supported its objections, and the rejection of the Report and Recommendation. Dkt. No. 15. On December 23, 2014, Judge Yeakel entered an order re-referring the motion to remand for an amended report and recommendation "in light of the United States Supreme Court's decision in *Dart Cherokee Basin Operating Co. LLC v. Owens*, 2014 WL 7010692 (Dec. 15, 2014)." Dkt. No. 16. Subsequent to the

case being referred back to the undersigned, McPhail filed a response to Lyft's objections, in which it also addressed the *Dart* case, Dkt. No. 17, and Lyft has responded to those arguments with its reply filed on January 5, 2015. Dkt. No. 18. The motion to remand is therefore once again ripe for review.

## I. BACKGROUND[1]

On July 24, 2014, McPhail filed suit against Lyft in the 98th Judicial District Court of Travis County, alleging that Lyft failed to provide her an accessible cab or equivalent transportation service. McPhail, an Austin resident, has a physical disability and uses a wheelchair for mobility. She is also a member of ADAPT of Texas, a grass-roots disability rights organization made up primarily of people with disabilities. Among other things, ADAPT has worked to ensure that transportation services including urban, intercity and taxi transportation are accessible to people with disabilities. Dkt. No. 1-3 at pp. 2-3. Lyft, a Delaware corporation with its principal place of business in San Francisco, California, is a is a mobile-based ridesharing platform that matches people who need rides with people who have cars. It is utilized in over 65 cities, including Austin. Lyft does not own any vehicles, and takes the position that it does not provide transportation services. Rather, Lyft states that its platform provides a means to match drivers and riders. In Austin, the rider, in his or her sole discretion, may voluntarily elect to make a suggested donation to the driver or no donation at all. Dkt. No. 1-4.

On July 15, 2014, McPhail used a cellphone application to contact Lyft for a ride. Dkt. No. 1-3 (Original Petition) at 3. The vehicle that arrived was not wheelchair accessible. *Id.* McPhail alleges that Lyft does not have a single wheelchair accessible vehicle operating in Austin. *Id.* In her

---

[1] The Court repeats much of what was contained in the original Report and Recommendation, so that the reader need only consult this document to have the necessary background information.

Original Petition filed in state court, McPhail alleged that the failure to accommodate her disability violated Chapter 121 of the Texas Human Resource Code. TEX.HUM.RES. CODE § 121.003. On August 29, 2014, Lyft filed a notice of removal to federal district court based on federal question jurisdiction under 28 U.S.C. § 1441, and diversity jurisdiction under 28 U.S.C. §1332. Dkt. No. 1. On that same day, McPhail filed her First Amended Petition with the state court. Dkt. No. 2-3. Asserting that it was unclear whether the First Amended Petition was filed before or after the Notice of Removal, Lyft filed an Amended Notice of Removal including the First Amended Petition. Dkt. No. 2.

In the motion before the Court, McPhail argues that the Court has neither federal question nor diversity jurisdiction over this case. She argues that the live pleading should be considered the First Amended Petition, which excludes any reference to the ADA. She contends further that even if the Original Petition is considered her live pleading, the references to the ADA there were inadvertently included, and are thus insufficient to raise a federal question. Regarding diversity jurisdiction, she argues that the amount she is seeking in damages is less than $75,000, and no diversity jurisdiction exists. Lyft responds that the live pleading is the Original Petition, as the Notice of Removal was filed prior to the filing of the First Amended Petition, and federal question jurisdiction exists because McPhail seeks relief in her Original Petition under Title III of the ADA. On the issue of diversity jurisdiction, Lyft contends such jurisdiction exists because the parties are citizens of different states, and the amount in controversy exceeds $75,000.

## II. ANALYSIS

As noted above, Judge Yeakel's referral of this matter for an amended Report and Recommendation was provoked by the Supreme Court's decision in *Dart*. As explained in what

follows, *Dart* does not change the undersigned's recommendation on the motion to remand, as no federal question is presented by this case, and the preponderance of the evidence indicates that there is not a sufficient amount in controversy to support diversity jurisdiction.[2]

**A.     Federal Question Jurisdiction**

28 U.S.C. § 1331 vests federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a case "arises under" federal law, the court must apply the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* "A federal question 'is presented' when the complaint invokes federal law as the basis for relief. It does not suffice that the facts alleged in support of an asserted state-law claim would also support a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003).

As noted in the original Report and Recommendation, Lyft's argument in support of federal question jurisdiction is based on stray references to the ADA in the Original Petition. Importantly, McPhail's Original Petition states only a single "Cause of Action," which she entitled "Violations of Chapter 121." Dkt. No. 1-3 (Original Petition) at 4. It plainly states a claim only under Chapter 121 of the Texas Human Resources Code. But at the end of this cause of action, McPhail includes a section entitled "Relief Requested," in which she summarizes the damages and other remedies she seeks for this state law claim. In a subsection entitled "Injunctive Relief," McPhail states that she

---

[2]Although Judge Yeakel did not indicate in the order re-referring the motion that he wished the undersigned to address Lyft's objections filed on December 9, 2014, in explaining why remand is appropriate the Court will address some of what Lyft argues in its objections and reply.

is requesting "injunctive relief because, absent an injunction, Defendant will continue to refuse to comply with Title III of the ADA and Chapter 121." *Id.* at ¶ 30.  Two pages later, in her prayer for relief, at the end of a long description of the injunction she is requesting, McPhail asks that, in addition to much else, the injunction "forc[e] Defendant to comply with Title III of the ADA and Chapter 121 in the future." *Id.* at Prayer, ¶ B.  Finally, in praying for attorney's fees, she asked that fees and expenses be awarded "pursuant to the ADA." *Id.* at ¶ D.  Based on these references, Lyft contends that the Original Petition contains a federal question.

As noted in the original Report and Recommendation, the Court was faced with a nearly identical situation just a few months ago in *Salovitz v. Uber Tech., Inc.*, 2014 WL 5318031 (W.D. Tex., Oct. 16, 2014).  The firm representing the plaintiff in that case is the same firm representing McPhail here, and in that case the plaintiff sued Uber Technologies, Inc., another ride-sharing application, making the very same claims McPhail makes here.  Both suits were filed in the Travis County District Court on July 24, 2014.  In that case, the plaintiff's counsel had made almost identical mistakes in his pleading, purporting to assert a claim only under Chapter 121 of the Texas Human Resources Code, but referencing the ADA in the request for an injunction and the prayer for relief.  The plaintiff's counsel in that case insisted that the references to the ADA in the petition were inadvertently included, and should have been deleted during the editing process.  As he did in *Salovitz*, he has filed a declaration in this case swearing to the same.  Dkt. No. 8-7 at ¶ 5.  In *Salovitz*, the undersigned surveyed the applicable law on such stray references in pleadings, and whether they created a federal question allowing removal.  *Salovitz* at *4-5.  After considering that case law, the Court concluded that the petition in that case failed to raise a federal question.  *Id.*

The case is the same here. While McPhail's inadvertent references to the ADA may have created some confusion, in the end, McPhail is "the master of her complaint." A fair reading of the Original Petition and subsequent evidence shows that any reference to the ADA was a clerical error. As noted, McPhail only referenced the ADA claim in subsidiary portions of the pleading, as opposed to the one "Cause of Action" she pled. Indeed, in this case the facts are even more compelling than in *Salovitz*, as McPhail actually notified Lyft of her error, and her intent to correct it, before the Notice of Removal was filed. Courts faced with similar stray references in pleadings have reached the same conclusion. For example, in *Citigroup, Inc. v. Wachovia Corp.,* 613 F. Supp.2d 485, 493 (S.D.N.Y. 2009), the court found that a reference to the "EESA"—the Emergency Economic Stabilization Act—was a typographical error where it was only referenced in the prayer for relief, and thus did not raise a federal question. Here, the acronym "ADA" was never defined in the pleading and no reference to a specific section of the statute was mentioned, suggesting that the reference was "cut and pasted" from a different document. *See Jackson v. Prime Motors, Inc.,* 2011 WL 1883806, at *4 (E.D. Pa. May 18, 2011) (finding that reference to FDCPA was a clerical error in part because it was not defined and appeared to be pasted in document). And McPhail's attorney's declaration removes any doubt as to whether McPhail intended to assert an ADA claim in the Petition.[3]

Based upon the foregoing, the Court finds that reference to the ADA in McPhail's Original Petition was a clerical mistake and, therefore, no federal question was raised in the Original Petition. As the Seventh Circuit has stated, "[t]his case should not come to federal court if the only ground for

---

[3]It is appropriate for the Court to consider such a declaration in determining the plaintiff's intentions. *See Asociacion Nacional De Pescadores v. Doe Quimica*, 988 F.2d 559, 565 (5th Cir. 1993) (considered affidavits since "in this case the affidavits clarify a petition that previously left the jurisdictional question ambiguous."), *abrogated on other grounds*, *Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211 (5th Cir.1998); *Dixon v. Alcatel USA, Inc.*, 2000 WL 193620, at * 2 (N.D. Tex. Feb. 16, 2000) (considering attorney's affidavit to find that reference to ADA was merely a clerical error).

jurisdiction is a clerical error, however careless." *Schillinger v. Union Pacific R. Co.*, 425 F.3d 330, 333 (7th Cir. 2005). Or, as the *Jackson* court put it, "It would defy common sense to exercise jurisdiction because [plaintiff]'s counsel accidentally referenced a federal statute." *Jackson,* 2011 WL 1883806 at *4. *See also, Citigroup, Inc.,* 613 F. Supp.2d at 493 ("The Court will not base subject matter jurisdiction on a typographical error"). Accordingly, removal of the case on federal question grounds was not warranted.

B.     **Diversity of Citizenship and Amount in Controversy**

The other basis on which Lyft defends its removal, and the argument on which the vast majority of its briefing has been focused, is diversity jurisdiction. The sole issue in dispute on the question of whether diversity jurisdiction exists in this case involves whether the $75,000 amount in controversy requirement is met. McPhail contends that because she has submitted a binding stipulation limiting her recovery to less than $75,000, as a matter of law the amount in controversy for diversity purposes has not been, and cannot be, met. Lyft responds that it has submitted evidence that the cost to it of providing services to disabled individuals in Austin exceeds $75,000, and because McPhail has failed to controvert that evidence, the Court must find that the amount in controversy threshold has been met. As noted earlier, on December 22, 2014, Lyft submitted a Notice of Supplemental Authority, arguing that the Supreme Court's decision in *Dart* lends support to its position. This in turn spurred Judge Yeakel to refer the case back to this Court to consider the impact of the *Dart* decision on the motion to remand.

Lyft's claim that the *Dart* decision is supportive of its position in this case is not borne out by a review of that case. In fact, Lyft misstates the issue in *Dart*. In its Notice of Supplemental Authority, Lyft stated that *Dart* "clarifies the applicable procedure for assessing removal jurisdiction

when the defendant's assertion of the amount in controversy is challenged." Dkt. No. 15 at 1. But that was not at issue in the case. The sole question on which certiorari was granted in *Dart* was: "Must a defendant seeking removal to federal court include evidence supporting federal jurisdiction in the notice of removal, or is including the required 'short and plain statement of the grounds for removal' enough?"[4] *See also Dart*, 135 S.Ct. at 551 (identifying this as the "single question argued here and below by the parties and the issue on which we granted review"). More to the point, the Court in *Dart* says absolutely nothing about how to value the amount in controversy when a party is suing to enforce a civil right protected by a statute. Indeed, it doesn't even say anything about how to value the amount in controversy when a plaintiff is seeking a declaratory judgment or equitable relief.

The closest *Dart* comes to having relevance to the issue presented here, and the only language Lyft cites from the decision, is the Court's recitation and summary of language added to the removal statute in 2011. The Court itself noted that *the statutory language added in 2011*—not its decision—is what "clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged." *Id.* at 554. Indeed, the 2011 statute was titled the "Federal Courts Jurisdiction and Venue *Clarification* Act of 2011." Thus, to suggest that the Supreme Court's decision in *Dart* clarified the procedure to follow when there is a dispute about the amount in controversy in a removed case completely misunderstands the decision. The applicable procedure was set forth—indeed, "clarified"—in 2011, and was in place when the original Report and

---

[4]*See* http://www.supremecourt.gov/qp/13-00719qp.pdf (visited March 10, 2015).

Recommendation was filed in November 2014. *Dart* added nothing new on that point, as the removal statute already dictated the applicable procedure.[5]

Moreover, the applicable procedure has never been an issue in this case. No one—the Court included—denies that disputes regarding the amount in controversy are determined by the preponderance of the evidence, pursuant to the procedure set out in §1446(c)(2). What *is* in dispute is not whose proof is better, but rather what is the proper methodology for determining the amount in controversy when an individual is seeking an injunction requiring a third party to comply with a statute. Lyft contends that the answer is that the Court must look to the costs *Lyft* would incur if it took steps enabling it to provide ride services to disabled individuals. McPhail counters that the correct standard in the Fifth Circuit is to look at the issue from *her* perspective, and not to consider the costs to Lyft. So Lyft's contention that McPhail's failure to controvert Lyft's evidence means Lyft wins on the removal issue assumes that Lyft's costs are a valid part of the analysis. But that begs the question the Court must decide (and did decide in its original Report and Recommendation), and thus Lyft's argument (which it repeats in its objections, Dkt. No. 14 at 7-11) that remand must be denied because McPhail failed to controvert its evidence is a red herring.

Judge Boyle of the Northern District of Texas effectively reached this same conclusion in a recent case. *Chocolate Prescription LLC v. Nimbor, Inc.*, 2013 WL 1187276 *3 (N.D. Tex. 2013). The defendant there made the same argument Lyft makes here, contending that because the only

---

[5]Moreover, the statute simply codified what had been the law for decades before that. *E.g., St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.2d 1250, 1253 (5th Cir. 1998) ("In removal practice, when a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.").

evidence was its evidence demonstrating the costs of complying with an injunction, it should prevail on the amount in controversy question. In dispatching that argument, Judge Boyle stated:

> Defendants fall short of their burden [of demonstrating diversity jurisdiction] because the only evidence they present on damages is the potential costs incurred by Defendants if an injunction were to be granted. But courts do not consider the costs to the Defendants in measuring the pecuniary value of the injunctive relief to the Plaintiff. Defendants' comparison argument unpersuasively operates as a backdoor attempt to evaluate the amount in controversy from the Defendants' perspective rather than the Plaintiff's perspective. . . . Alternatively, Defendants contend that there is no evidence to the contrary that the amount in controversy is less than $75,000. But the removing party may not shift its burden of proof to the Plaintiff without having first established by a preponderance of the evidence that the amount in controversy exceeds $75,000.

*Id.* at *3-4 (citations omitted). In short, Lyft's argument that it must prevail because it submitted evidence of its costs, and McPhail did not contest it, is off point.

In the *Uber* case the undersigned was presented with the same viewpoint dichotomy as here. Uber contended that to determine the amount in controversy the Court must consider *its* costs in complying with an injunction, while the plaintiff contended such an approach was inconsistent with Circuit precedent. The Court, after surveying the applicable law, rejected Uber's argument because it "measure[d] the amount in controversy from the wrong perspective . . . as it is be measured from the point of view of the plaintiff." *Salovitz,* 2014 WL 5318031 at *6. In its original Report and Recommendation here, the Court noted that Lyft had relied on the same case law that Uber had, and explained that the cases Lyft relied on were distinguishable because they were cases in which declaratory or injunctive relief was sought on contractual rights, or insurance policies.[6] In all of those cases the value of the contract right or insurance coverage was the same from either

---

[6]*See, e.g., St. Paul*, 134 F.3d 1250 (insurance policy dispute); *Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*, 435 F.Supp. 2d 578 (E.D. Tex. 2006) (contract dispute).

perspective, and was readily reduced to a monetary value. The same is the case with regard to the foreclosure cases Lyft cites in its original response, and again in its objections to the original Report and Recommendation. Dkt. No. 6 at 8-9; Dkt. No. 14 at 6. Those courts note that "the object" of an injunction to prevent foreclosure, regardless of whose vantage point you look at it from, is title to the property, so the proper method to value the amount in controversy in such a case is the fair market value of the property. This in fact is the Fifth Circuit's rule when valuing an injunction seeking to prevent a foreclosure :

> In actions enjoining a lender from transferring property and preserving an individual's ownership interest, it is the property itself that is the object of the litigation; the value of that property represents the amount in controversy.

*Farkas v. GMAC Mortg. LLC*, 737 F.3d 338, 341 (5th Cir. 2013). Notwithstanding Lyft's position to the contrary, the foreclosure cases are in fact consistent with the Fifth Circuit's plaintiff-focused approach; they simply hold that the value of the injunction from the plaintiff's perspective *is* the value of the property.

The fact is that the Fifth Circuit has long held that the plaintiff-focused approach is the correct approach when there is a dispute regarding the amount in controversy, particularly when a plaintiff is seeking declaratory or injunctive relief, and the amount in controversy might be different from the plaintiff's perspective than from the defendant's. More than 60 years ago the Circuit was faced with a case in which home owners were seeking to recover damages for the "taking" they contended occurred when the Tampa airport extended its runways and began take offs and landings over the plaintiffs' homes. *Alfonso v. Hillsborough County Aviation Auth.*, 308 F.2d 724 (5th Cir. 1962). In determining the amount in controversy the Court concluded it was constrained by the plaintiffs' allegations that their homes had been damaged in the amount of $4,000, stating that "[t]he

value to *the plaintiff* of the right to be enforced or protected determines the amount in controversy." *Id.* at 727 (emphasis added).

Citing circuit precedent, numerous district courts in this circuit have refused to consider the costs to the defendant in complying with an injunction when evaluating the amount in controversy for diversity purposes. Judge Fitzwater of the Northern District of Texas explained the law well in *Sims v. AT&T Corp.*, 2004 WL 2964983 (N. D. Tex. Dec. 22, 2004). In that case a putative class of plaintiffs brought suit in state court complaining that AT&T had mistakenly billed several hundred thousand customers. Among other relief, the plaintiff sought an injunction requiring AT&T to stop billing class members, to audit all bills sent to class members and make appropriate adjustments, to correct any unfavorable credit reports because of the charges, and to refund monies paid for unauthorized charges. *Id.* at *1. In rejecting AT&T's argument that the cost to it of doing all of this was part of the amount in controversy, Judge Fitzwater explained:

> AT&T first argues that the minimum jurisdictional amount is met because the pecuniary consequence of the declaratory and injunctive relief that Sims seeks exceeds $75,000. It correctly asserts that "[t]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." (quoting *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1252–53 (5th Cir.1998)). But it then follows the wrong analytical path by maintaining . . . that this value can be measured by the pecuniary consequence to AT&T.
>
> * * *
>
> The correct perspective for measuring the amount in controversy is "[t]he *value to the plaintiff* of the right to be enforced or protected." *Alfonso v. Hillsborough County Aviation Auth.*, 308 F.2d 724, 727 (5th Cir.1962) (emphasis added). . . . AT&T's reliance on *Duderwicz* to argue against a "plaintiff-viewpoint" approach —thereby allowing the court to exercise jurisdiction because AT & T's cost of compliance with a requested order meets the jurisdictional requirement—is misplaced.

*Id.* at *3 (some citations omitted).  Similarly, in 2005, Judge Guirola of the Southern District of Mississippi stated that:

> The object of the litigation is the value of the right to be protected or the extent of the injury to be prevented from the plaintiff's viewpoint. . . . While this Court recognizes that other Circuits have considered the "defendant's viewpoint", especially in cases where equitable relief is sought by the Plaintiff, it is bound by Fifth Circuit precedent which has uniformly applied the "plaintiff's viewpoint" for determining the value of the amount in controversy for purposes of removal.

*Jackson County Airport Authority v. Igo*, 2005 WL 1595665 (S.D. Miss. June 13, 2005) at *3 (citations omitted).  *See also Chocolate Prescription*, at *3 ("courts do not consider the costs to the Defendants in measuring the pecuniary value of the injunctive relief to the Plaintiff").

Viewing from McPhail's perspective the value of the injunction she requests —an injunction prohibiting Lyft from discriminating against her—means that the threshold amount in controversy is not met, as she has properly limited her right to recover for any such discrimination to an amount less than $75,000.  Dkt. No. 5-2.  Even had she not so limited her recovery the same conclusion would be appropriate, because the value to a disabled person of not being discriminated against is inherently speculative, and not easily reducible to pecuniary terms.  In such cases, courts have refused to include such relief in the calculation of the amount in controversy.  *See, e.g., United Food Local 919 v. Centermark Properties*, 30 F.3d 298, 306 (2nd Cir. 1994) (determining value of right of free speech too speculative).  Professors Wright and Miller have catalogued a number of cases where courts have declined to include the value of injunctions for such things as competing in the Olympics, or a determination of the parties' marital status, because to do so was too uncertain or speculative.  CHARLES ALAN WRIGHT, ARTHUR R. MILLER, 14AA FEDERAL PRACTICE AND PROCEDURE § 3708 at 762 n.4 (4th ed. 2011).

Finally, even if the Court were required by Circuit law to apply a standard that required the defendant's costs of compliance to be included in the amount in controversy analysis, Lyft's evidence is not as strong as it suggests. Simply because McPhail did not originally offer controverting evidence does not mean that the Court must credit the conclusory statement in the affidavit Lyft submitted with its removal petition. In that affidavit, Lyft's Director of Public Policy states that:

> In order to guarantee the availability of a wheelchair accessible vehicle through Lyft's platform, Lyft would have to fundamentally change its business model. Specifically, Lyft likely would have to acquire and operate wheelchair accessible vehicles, even though Lyft's business currently does not involve owning vehicles or providing transportation services. The cost of one such vehicle alone is greater than $75,000. Thus, the injunctive relief that McPhail seeks has a value of well over $75,000.

Dkt. No. 1-4 at ¶ 8. This statement is simply not believable. Given that Lyft has persistently taken the position that it does not own any cars, and does not operate a transportation service, it strains credulity to believe that it would suddenly jettison its entire business model and respond to an injunction in this case by purchasing one or more cars. Rather, one would think it would recruit ride-sharing drivers who own accessible vehicles, consistent with its claim that it is a ride sharing platform "that matches people who need rides with people who have cars." *Id.* at ¶ 1. This is further demonstrated by the Transportation Network Company Operating Agreement that Lyft entered into with the City of Austin in November 2014. Dkt. No. 17-1.[7] As McPhail notes, Lyft has agreed to modify its App to provide a means for a person to request an accessible vehicle, and to conduct outreach to try to recruit owners of accessible vehicles to become Lyft drivers. *Id.* at ¶¶ U, AA. Two

---

[7]Lyft objected to McPhail's submission of the agreement as untimely because it was submitted after the original Report and Recommendation. As noted at the outset, on December 23, 2014, Judge Yeakel referred the motion to remand back to the undersigned, and thus there is nothing untimely about McPhail's submission of the agreement.

conclusions flow directly from this. First, the hard-to-believe claim in the affidavit—that Lyft would purchase vehicles to comply with an injunction—is most likely false. And second, if Lyft has already agreed, independent of this case, to take steps to make its business accessible to the mobility impaired community, then it cannot attribute the costs of doing so to an injunction that might ultimately be entered in this case. So even if the Court were to include Lyft's evidence of its costs in the amount in controversy calculation, that evidence fails to show that the amount in dispute is more than $75,000.

For all of the reasons stated above, and as explained in the original Report and Recommendation in this case (Dkt. No. 13), the Court concludes that the requisite amount in controversy for diversity jurisdiction is lacking in this case.

## III. RECOMMENDATION

The undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion to Remand (Dkt. No. 5) and **REMAND** this case to the 98th Judicial District Court of Travis County Texas. In addition, because remand is appropriate without considering the amended complaint, the undersigned **FURTHER RECOMMENDS** that the Court **DISMISS** Plaintiff's Opposed Motion for Leave to Amend (Dkt. No. 8) as moot.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of March, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE